United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSEPH JAMAUL JOHNSON,

        Plaintiff,

    v.

J. CERMENO, et al.,

        Defendants.

Case No. 19-cv-02345-SI

**ORDER OF SERVICE**

Re: Dkt. Nos. 17, 20

Joseph Johnson, an inmate at Kern Valley State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983.  His second amended complaint is now before the court for review under 28 U.S.C. § 1915A.

**BACKGROUND**

The second amended complaint alleges the following:  On July 12, 2018, several days after arriving at Salinas Valley State Prison, Johnson appeared before the Institution Classification Committee (ICC) for custody review and program placement.[1]  The ICC found no reason to retain Johnson in administrative segregation and elected to move him into the general population in Facility C because he had no documented enemy situation at Salinas Valley.  Docket No. 17 at 4-5.

While Johnson was waiting to be moved to Facility C, correctional sergeants Qyarzabal and Cermeno informed him that he "did have an enemy in Facility C" and therefore could not be released into the Facility C yard.  Docket No. 17 at 5.  Sergeant Qyarzabal questioned the ICC's decision to

---

[1]Although the second amended complaint does not so allege, the first amended complaint alleged that the ICC committee members were defendants Shawn Hatton, Victor Solis, and Jason Martines.  Docket No. 11 at 6.

United States District Court
Northern District of California

1   release Johnson to Facility C "while there existed a documented enemy situation." *Id.* Nonetheless,

2   Johnson was released to Facility C on July 15 and placed on orientation status, which meant he was

3   confined to quarters until a more appropriate housing placement was made.

4   On July 16, 2018, correctional officer (C/O) Doe, a Building C-1 floor officer, informed

5   Johnson that he had to go to the yard. Doe stated that yard time was mandatory even though Johnson

6   said he (Johnson) was still on orientation status and restricted from all movement and activities.

7   Another C/O Doe, a Building C-1 gun tower officer, opened Johnson's cell door and Johnson went

8   out on the C yard.

9   While on the yard, Johnson "was approached and assaulted by four inmates" while C/O

10  Matias, C/O Salgado and sergeant Perez stood by and watched. *Id.*[2] C/O Doe, a C yard gun tower

11  officer, "fired two rounds from the yard tower but hit plaintiff in the face and arm, rather than his

12  attackers, and caused plaintiff serious bodily injury." *Id.* Johnson was given some treatment at the

13  prison and then was taken to an outside emergency room at Natividad Medical Center.

14  At Natividad, the emergency room physician, Dr. Klick, told Johnson that he had a fracture

15  of his orbital wall and would need to have his "sutures removed in 5-7 days and probably surgery."

16  *Id.* at 6.

17  On July 23, sutures were removed at the clinic by a physician's assistant. It was

18  recommended that Johnson have "urgent molar fracture repair because [Johnson] had difficulty

19  chewing his food and brushing his teeth, he felt pain on the right face, [and he] had blurry vision."

20  *Id.*

21  Although Johnson was initially hesitant to have surgery, he later changed his mind. He

22  alleges that he "wants to proceed with the surgical repair because he cannot eat nor brush his teeth

23  properly but more importantly his eye hurts – the pain is unbearable." *Id.* He submitted numerous

24  health care requests, grievances, and appeals requesting proper medical care on July 26, 2018. He

25  underwent a "facial bone surgical repair" by Dr. Trapp on August 2, 2018, to repair damage from

26

27  [2] In his original verified complaint, Johnson alleged that the four attacking inmates caused "facial bone fractures of right jaw; cheekbone; timple to jaw; broken nose; [and] broken elbow,"

28  and thereafter he was shot in the face by someone in the C-yard gun tower that caused him to suffer a cranium fracture and deep laceration on his head. Docket No. 1 at 3 (errors in source).

1    the rounds that were fired from the gun tower and had hit his face.  *Id.*   Johnson continues to have

2    severe headaches and vision impairment on a daily basis.  *Id.* at 7.   Dr. Sawyer (the medical

3    administrator or chief executive officer of health care services) and registered nurse Villanueva have

4    refused to arrange for the physical therapy that was recommended by an outside doctor.  *Id.* at 7.

5           The second amended complaint mentions several particular claims:  (1) Dr. Sawyer and

6    nurse Villanueva were deliberately indifferent to his serious medical needs by failing to arrange for

7    physical therapy and medical treatment; (2) various defendants retaliated against Johnson by

8    refusing to protect Johnson because Johnson had filed a lawsuit against prison staff; (3) the

9    correctional staff members who let him out of his cell and stood by as he was attacked negligently

10   failed to protect him.

11

12                                        **DISCUSSION**

13          A federal court must engage in a preliminary screening of any case in which a prisoner seeks

14   redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C.

15   § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims

16   which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek

17   monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b)(1),(2).

18   *Pro se* pleadings must be liberally construed.  *See Balistreri v.* Pacifica *Police Dep't*, 901 F.2d 696,

19   699 (9th Cir. 1990).

20          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a

21   right secured by the Constitution or laws of the United States was violated and (2) that the violation

22   was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48

23   (1988).

24          In determining whether any claim is stated and whether further leave to amend should be

25   granted, the court bears in mind that the second amended complaint is Johnson's third effort to set

26   out his claims and that he previously has been given guidance on the law and the necessary

27   allegations for deliberate-indifference claims as well as retaliation claims.  *See* Docket Nos. 8 and

28   11.

United States District Court
Northern District of California

3

1          <u>Eighth Amendment – deliberate indifference to safety:</u>  The Eighth Amendment's Cruel and

2     Unusual Punishments Clause requires that prison officials take reasonable measures to protect

3     prisoners from violence at the hands of other prisoners.  *See Farmer v. Brennan*, 511 U.S. 825, 833

4     (1994).  The failure of prison officials to protect inmates from attacks by other inmates or from

5     dangerous conditions at the prison violates the Eighth Amendment when two requirements are met:

6     (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

7     subjectively, deliberately indifferent to inmate health or safety.  *Id.* at 834.  A prison official is

8     deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by

9     failing to take reasonable steps to abate it.  *Id.* at 837.

10         Earlier, Magistrate Judge Kim found that Johnson's first amended complaint stated (1) a

11    cognizable deliberate-indifference-to-safety claim against sergeants Qyarzabal and Cermeno, who

12    allegedly knew Johnson had an enemy in Facility C yet failed to prevent Johnson's release into

13    Facility C; and (2) a cognizable deliberate-indifference-to-safety claim against C/O Matias, C/O

14    Salgado, and sergeant Perez, who allegedly stood by and watched as Johnson was being attacked by

15    four other inmates on July 16, 2018.  *See* Docket No. 11 at 3.  Liberally construed, the second

16    amended complaint states the same claims, i.e., (1) a cognizable deliberate-indifference-to-safety

17    claim against correctional sergeants Qyarzabal and Cermeno who allegedly knew Johnson had an

18    enemy in Facility C yet failed to prevent Johnson's release into Facility C on July 12, 2018; and (2)

19    a cognizable deliberate-indifference-to-safety claim against C/Os Matias, Perez, and Salgado, who

20    allegedly stood by and watched as Johnson was being attacked by four other inmates.

21         Magistrate Judge Kim also earlier determined that deliberate-indifference-to-safety claims

22    were not stated with the allegations that the ICC members failed to properly assess Johnson's enemy

23    situation and that the Doe defendant C/Os should have known better than to release him into the

24    Facility C-yard.  *Id.*  Magistrate Judge Kim explained that negligence did not amount to an Eighth

25    Amendment violation and Johnson had not alleged facts suggesting that these defendants *knew* that

26    Johnson faced a substantial risk of harm (e.g., that they *knew* that Johnson had an enemy in Facility

27    C) and had disregarded that risk by failing to take reasonable measures to abate it.  *Id.*  This was

28    the second time the test for a deliberate-indifference-to-safety claim had been explained to Johnson.

United States District Court
Northern District of California

4

1    *See* Docket Nos. 8 and 11.  He was granted "a final opportunity to amend to allege, if possible,

2    specific facts showing that Hatton, Solis, Martines, John Doe # 1 and/or Johns Doe # 2 *knew* that

3    plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take

4    reasonable measures to abate it."  Docket No. 11 at 3-4.  Magistrate Judge Kim also gave Johnson

5    one last chance to make the same sort of allegations for a deliberate-indifference claim against the

6    Doe defendant who fired the rounds from the yard gun tower that hit Johnson.  *Id.* at 4.

7          Even with liberal construction, the second amended complaint does not state a cognizable

8    claim against defendants Hatton, Solis and Martines, who were the members of the ICC that placed

9    Johnson in Facility C.  None of these defendants are alleged to have known that Johnson had an

10   enemy in Facility C or otherwise faced a substantial risk of harm if placed in Facility C.  Likewise,

11   the second amended complaint does not state a claim against the two Doe defendant correctional

12   officers who sent Johnson to the yard because no facts are alleged that plausibly suggest that either

13   of these defendants knew that Johnson had an enemy on the yard or otherwise faced a substantial

14   risk of harm if sent to the yard.  Further leave to amend will not be granted because it would be

15   futile: the court has already explained the deficiencies in the pleading and Johnson was unable or

16   unwilling to correct those deficiencies.

17         <u>Eighth Amendment – excessive force:</u>  The second amended complaint also does not state

18   an Eighth Amendment claim against the correctional officer who fired one or two rounds that hit

19   Johnson rather than his attackers.  (Johnson has characterized the shooting as retaliation, rather than

20   excessive force, but an excessive force analysis is appropriate in addition to the retaliation analysis.)

21   "[W]henever prison officials stand accused of using excessive physical force in violation of the

22   Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

23   in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

24   *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  "The infliction of pain in the course of a prison

25   security measure, therefore, does not amount to cruel and unusual punishment simply because it

26   may appear in retrospect that the degree of force authorized or applied for security purposes was

27   unreasonable, and hence unnecessary in the strict sense."  *Whitley v. Albers*, 475 U.S.312, 319

28   (1986).  The attack on Johnson was a violent attack seriously hurting him – he suffered multiple

United States District Court
Northern District of California

1   fractures to bones in his head and a broken elbow, *see* footnote 1, supra – before the correctional

2   officer fired the rounds.   Johnson does not allege facts plausibly suggesting that the correctional

3   officer fired the round for the purpose of harming him rather than in a good faith effort to stop the

4   ongoing attack and restore discipline.   If Johnson has additional facts to allege that support an

5   excessive-force claim, he may file an amendment to his second amended complaint to allege that

6   claim.   If Johnson wants to pursue a claim against the shooter for excessive force, he must file an

7   amendment to his second amended complaint and provide that person's true name within **sixty days**

8   of the date of this order.

9        Retaliation:   The second amended complaint does not state a claim for retaliation.   Johnson

10   alleges that defendants failed to protect him from other inmates to retaliate against him for filing a

11   lawsuit against prison staff.    But he does not allege specific facts to support his conclusory

12   allegations of retaliation.   Magistrate Judge Kim's order of dismissal with leave to amend and

13   second order of dismissal with leave to amend both identified the elements of a retaliation claim,

14   i.e., a prisoner-plaintiff "must set forth specific facts showing that (1) a named prison official took

15   some adverse action against plaintiff (2) because of (3) plaintiff's protected conduct, and that such

16   action (4) chilled plaintiff's exercise of his First Amendment rights, and (5) the action did not

17   reasonably advance a legitimate correctional goal."   *See* Docket No. 11 at 2 (citing *Rhodes v.*

18   *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)); Docket No. 8 at 2.   The second amended complaint

19   simply labels defendants' actions retaliatory and does not allege any facts that plausibly show that

20   any defendant took adverse action because of Johnson's exercise of his First Amendment rights.

21   For example, Johnson does not allege anything about the lawsuit (such as whether his lawsuit

22   involved any defendant or whether any defendant was even aware of the lawsuit) to suggest why it

23   would prompt retaliatory acts by defendants and does not allege any circumstances (such as a

24   statement by a defendant that he was going to get even with Johnson or put Johnson in danger as

25   payback for the lawsuit) suggesting a retaliatory motive.   A retaliation claim is not stated.   Further

26   leave to amend will not be granted because it would be futile: the court has already explained the

27   deficiencies in the pleading and Johnson was unable or unwilling to correct those deficiencies.

28

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1        Eighth Amendment – deliberate indifference to medical needs:  Deliberate indifference to a

2   prisoner's serious medical needs violates the Eighth Amendment's prohibition of cruel and unusual

3   punishment.  *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  To establish an Eighth

4   Amendment claim based on inadequate medical care, a prisoner-plaintiff must show: (1) a serious

5   medical need, and (2) deliberate indifference thereto by a defendant.  Deliberate indifference may

6   be demonstrated when prison officials deny, delay or intentionally interfere with medical treatment,

7   or it may be inferred from the way in which prison officials provide medical care.  *See McGuckin*

8   *v. Smith*, 974 F.2d 1050, 1062 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v.*

9   *Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Liberally construed, the second amended

10  complaint states a claim against defendants Dr. Sawyer and nurse Villanueva based on the

11  allegations that these two defendants failed to arrange for physical therapy and needed medical

12  treatment for Johnson.

13        State law negligence claim:  The second amended complaint does not state a negligence

14  claim.  Johnson alleges that two Doe defendants negligently let him out of his cell into the yard

15  where he was attacked; that defendants Matias, Salgado, and Perez negligently failed to protect him

16  from the attacking inmates; and apparently that a third Doe defendant negligently fired the rounds

17  that hit Johnson.  Although Johnson has invoked the court's supplemental jurisdiction to hear the

18  state law negligence claims, *see* Docket No. 17 at 2, there is a problem that affects all his negligence

19  claims: he has not pled compliance with a claims-filing requirement.

20        The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred

21  to as the California Government Claims Act by the courts, *see City of Stockton v. Superior Court*

22  *(Civic Partners Stockton, LLC)*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present

23  his claim to the California Victim Compensation and Government Claims Board ("Board") before

24  he may file an action for damages against a California governmental entity or employee "for death

25  or for injury to person or to personal property."  Cal. Gov't Code § 911.2; see Cal. Gov't Code §§

26  905.2, 911.2, 945.4, 950.2.  The Government Claims Act has strict time limits for filing such a claim

27  with the Board and for filing an action in court after the rejection of such a claim.  A claimant must

28  present his claim to the Board within six months of the accrual of the cause of action.  *See* Cal. Gov't

7

1    Code § 911.2.  Additionally, an action against a governmental entity or employee covered by the

2    claims-presentation requirement must be filed within six months following written notice of

3    rejection of the claim by the Board.  *See* Cal. Gov't Code § 945.6(a)(1).  Timely claim presentation

4    is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity]

5    defendant."  *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004).  The failure

6    to include the necessary allegations about claim presentation makes a complaint subject to attack

7    for failure to state a cause of action.  *Id.*   In short, a plaintiff has to file a claim with the Board and

8    has to pled that he has done so.

9            Johnson fails to state a claim for negligence against anyone because he does not include any

10    allegations suggesting he timely presented his claim to the Board or filed this action within six

11    months following rejection of the claim.  The negligence claims therefore are dismissed.  If Johnson

12    has filed a claim with the Board and can make the necessary allegations about the presentation of

13    that claim, he may file an amendment to the second amended complaint within **sixty days** to allege

14    his negligence claims and include allegations about the presentation of his claim to the Board in that

15    amendment.

16           The court has chosen to let Johnson file an amendment to the second amended complaint,

17    rather than requiring a third amended complaint, if Johnson wants to try to plead claims for excessive

18    force and negligence.  The difference between a third amended complaint and an amendment to the

19    second amended complaint is that the former (i.e., a third amended complaint) would supersede the

20    second amended complaint while the latter (i.e., an amendment) would be read in conjunction with

21    the second amended complaint.  The court has chosen amendment instead of a third amended

22    complaint because the pleadings to date suggest that Johnson might inadvertently omit claims the

23    court has already found cognizable if he files a third amended complaint.  Also, the fact that Johnson

24    has not alleged necessary facts in the first three attempts suggests that he will not be able to do so

25    in the future; setting a sixty-day limit on the amendment allows this year-old case to move forward

26    while still allowing for the small possibility that he will be able to provide the necessary allegations.

27

28

United States District Court
Northern District of California

**CONCLUSION**

1.      Liberally construed, the second amended complaint states cognizable § 1983 claims (a) against correctional sergeant A. Qyarzabal, correctional sergeant J. Cermeno, correctional officer M. Matias, correctional officer R. Salgado, and correctional sergeant M. Perez for deliberate indifference to Johnson's safety; and (b) against defendants Dr. Sawyer and nurse Villanueva for deliberate indifference to Johnson's medical needs.  All other claims and defendants are dismissed.

2.      The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, and a copy of the second amended complaint, and a copy of this order upon the following persons who apparently work at Salinas Valley State Prison:

- correctional sergeant A. Qyarzabal
- correctional sergeant J. Cermeno
- correctional officer M. Matias
- correctional officer R. Salgado
- correctional sergeant M. Perez
- Dr. S. Sawyer
- registered nurse M. Villanueva

3.      In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a.      No later than **August 28, 2020**, defendants must file and serve a motion for summary judgment or other dispositive motion.  If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the Court prior to the date the motion is due.  If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

b.      Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **October 2, 2020**.  Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

c.      If defendants wish to file a reply brief, the reply brief must be filed and served no later than **October 23, 2020**.

United States District Court
Northern District of California

4.      Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he is seeking to have the case dismissed.  As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the plaintiff's case will be dismissed and there will be no trial.

5.      All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel.  The court may disregard any document which a party files but fails to send a copy of to his opponent.  Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6.      Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

7.      Plaintiff is responsible for prosecuting this case.  Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal

10

1   Rule of Civil Procedure 41(b).  Plaintiff must file a notice of change of address in every pending

2   case every time he is moved to a new facility.

3         8.        Plaintiff is cautioned that he must include the case name and case number for this

4   case on any document he submits to this court for consideration in this case.

5         9.        Plaintiff's request for a copy of his second amended complaint and a copy of the

6   docket sheet is GRANTED.  Docket No. 20.  Plaintiff is cautioned that he must pay for all future

7   photocopies from the court.  The clerk will mail to plaintiff a copy of the second amended complaint

8   (Docket No. 17) and a copy of the docket sheet for this case.

9         **IT IS SO ORDERED**.

10   Dated: May 19, 2020

11   

12                                        SUSAN ILLSTON
                                          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

11