UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH JAMAUL JOHNSON,<br>    Plaintiff,<br>    v.<br>J. CERMENO, et al.,<br>    Defendants. | Case No. 19-cv-02345-SI (pr)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT, AND SETTING BRIEFING SCHEDULE**<br><br>Re: Dkt. No. 36 |

This is a *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 in which Joseph Jamaul Johnson alleges that defendants violated his Eighth Amendment rights when they failed to protect him and failed to adequately address his medical needs. Defendants now move for summary judgment on the ground that Johnson failed to exhaust administrative remedies for his claims against them. For the reasons discussed below, defendants' motion for summary judgment will be denied as to the failure-to-protect claims and granted as to the medical-care claim. The court will set a briefing schedule for a further dispositive motion from the remaining defendants.

**BACKGROUND**

Johnson asserts claims based on acts and omissions that occurred at Salinas Valley State Prison (SVSP or Salinas Valley) in July and August 2018. The factual basis of his claims is described only briefly because defendants' motion pertains to exhaustion of administrative remedies rather than the merits of the claims. The following facts are undisputed unless otherwise noted.

A. The Claims Alleged

According to the verified second amended complaint, Johnson was transferred to Salinas Valley in early July 2018, where the following occurred:

On July 12, 2018, a classification committee met with Johnson, found no reason to retain him in administrative segregation, and decided to move him into the general population in Facility C because he had no documented enemy situation at Salinas Valley. Docket No. 17 at 4-5. While Johnson was waiting to be moved to Facility C, correctional sergeants Oyarzabal[1] and Cermeno informed him that he "did have an enemy in Facility C" and therefore could not be released into the Facility C yard. *Id.* at 5. Nonetheless, Johnson was released to Facility C on July 15 and placed on orientation status, which meant he was confined to quarters until a more appropriate housing placement could be made. *Id.*

The next day, July 16, an unidentified correctional officer (C/O) required Johnson to go to the yard. While on the yard, Johnson was "assaulted by four inmates" while C/Os Matias and Salgado and sergeant Perez "stood by and watched." *Id.* A gun tower officer "fired two rounds from the yard tower but hit [Johnson] in the face and arm, rather than his attackers, and caused [him] serious bodily injury." *Id.* (brackets added). Johnson was given some treatment at the prison and then was taken to the Natividad Medical Center emergency department where he received sutures. *See id.* at 6.

On July 23, sutures were removed at a clinic and it was recommended that Johnson have "urgent molar fracture repair because [Johnson] had difficulty chewing his food and brushing his teeth, he felt pain on the right face, [and he] had blurry vision." *Id.* (brackets added). Although initially hesitant to have surgery, Johnson later changed his mind and submitted numerous health care requests, grievances, and appeals requesting proper medical care on July 26. *Id.* He underwent a "facial bone surgical repair" by Dr. Trapp on August 2 to repair damage from the rounds that were fired from the gun tower and had hit his face. *Id.* Johnson continues to have severe headaches and vision impairment on a daily basis. *Id.* at 7.

---

[1] Sgt. Oyarzabal's name was initially misspelled on the court's Electronic Case Filing (ECF) system as "Qyarzabal." The correct spelling is "Oyarzabal." *See* Docket No. 42.

After the August 2 surgery, Dr. Sawyer[2] (the medical administrator or chief executive officer of health care services) and registered nurse Villanueva refused to arrange for the physical therapy that was recommended by an outside doctor. *Id.* at 7.[3]

The court earlier determined that the second amended complaint states the following claims for relief under § 1983: (1) an Eighth Amendment claim for deliberate indifference to Johnson's safety against correctional sergeants Oyarzabal and Cermeno, who allegedly knew Johnson had an enemy in Facility C yet failed to prevent Johnson's release into Facility C on or about July 12-15, 2018; (2) an Eighth Amendment claim for deliberate indifference to Johnson's safety against C/O Matias, C/O Salgado, and sergeant Perez, who allegedly stood by and watched as Johnson was being attacked by four inmates on July 16, 2018; and (3) an Eighth Amendment claim for deliberate indifference to Johnson's serious medical needs against Dr. Sawyer and nurse Villanueva, who allegedly failed to arrange for physical therapy that had been recommended by an outside doctor and failed to provide needed medical treatment for Johnson. *See* Docket No. 21 (order of service).

B.  Administrative Exhaustion Facts

   1.  Failure-To-Protect Claims

Johnson filed an inmate appeal regarding his release to Facility C and correctional staff's failure to stop an attack on him in the Facility C yard. The inmate appeal was dated July 26, 2018, and assigned inmate appeal log # SVSP-L-18-4390. Docket No. 36-2 at 10-13.

Johnson labelled this appeal as one for "staff misconduct," and provided the following explanation of his issue:

> On 7-14-18 I went to classification in ad/seg Z-9 and they released me to C-yard. The sgt. came to my door and told me I don't know why they sending you to C-yard you got a enemy on that yard[.] So on 7-16-18 I was still on orientation and they open my door to go to yard so I did and when they recall the yard I got attacked and beaten by 4 inmates to the point I had to be rushed to the outside hospital cause my

---

[2] Dr. Sawyer's name was initially misspelled on the court's ECF system as "Swayer." The correct spelling is "Sawyer." Docket No. 25 at 6.

[3] Johnson apparently was transferred to Kern Valley State Prison in August or September 2018, within weeks of the surgery, as reflected by the fact that he filed an inmate appeal in September 2018, complaining about medical treatment at Kern Valley State Prison. *See* Docket No. 36-1 at 6.

> eye socket was broken[.] All custody staff stood there standing letting me get attacked and not doing nothing to protect me at all a clear violation of tit. 15, sec. 3268.1(3)(c) refusal to intervene to stop my attack that happen right in there face[.] They didn't spray nobody they didn't even do a incident report on the attack they staged on me or take photos of my injuries I suffered[.] So by committee in ad/seg sending me out to the yard knowing I had a enemy over there the whole time they put my safety and my life in danger.

Docket No. 36-2 at 10, 12 (errors in source; brackets added). In the section for "action requested," Johnson wrote: "I would like a investigation on why committee kick me out to the yard putting my life in danger and also investigate why no custody staff try to stop my attack to protect me and why no incident report was ever done or no photos were taken after my attack." *Id.* at 10, 12 (errors in source). He also requested copies of all reports and that custody staff be reprimanded. *Id.* at 12.

The inmate appeal apparently bypassed the first level in the three-level appeal system and went to the second level. At the second level, prison officials partially granted the appeal in that the matter was treated as a complaint of staff misconduct and reviewed; the inmate appeal was "processed as an Appeal Inquiry." Docket No. 36-2 at 14-15. The response stated that the allegations of staff misconduct had been reviewed; that Johnson had been interviewed; that numerous correctional personnel had been questioned; and that incident, medical, and classification reports had been reviewed. *Id.* The correctional personnel who had been questioned included all five defendants against whom failure-to-protect claims are alleged in this action. *See id.* at 15. The second-level response concluded that staff "did not violate [California Department of Corrections and Rehabilitation (CDCR)] policy with respect to one or more of the issues appealed." *Id.* at 15 (brackets added). The response further stated that staff personnel matters were confidential and would not be shared, that "[a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process," and that the inmate had to submit his staff complaint appeal through the third level to exhaust administrative remedies. *Id.* at 15. The response also stated: "You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint. If you are unable to name all involved staff you may request assistance in establishing their identity." *Id.* at 14.

Johnson pursued his inmate appeal to the third level. On the inmate appeal form, he gave the reasons for his dissatisfaction with the second-level decision:

4

> I was set up from the start. I was on (orientation status) I was told by (build staff) I had to go out (to yard). I was assaulted. Staff (14) of them stood by. I was shot once in the head/once in the right arm. Sgt. Oyarzabal (Ozz) kept me in the hole 3 days because he knew I had a enemy on that yard. Why? *Ive requested for a copy of all incidents, reports from the captain of that yard and from the dispo officer on a Form 22. Both with negative results. I was told I can't have the report with the C/Os name on it. I requested it twice.* (I was shot) in the head by a C/O in the tower and once in the right elboe. Both places I was shot I had something broke. Look at the x-rays. I was fighting 5 people while 14 C/Os stood by. Why was I shot in the face. . . . It took 3 days for sergeant Ozz Oyarzabal to find me a cell. He know that General Jeff, that this inmate was a enemy. He told me out his mouth in front of the ASU sgt. that this inmate was on C-yard. He don't know why ICC doesn't know yet.

Docket No. 36-2 at 11, 13 (errors in source).

Johnson's inmate appeal was denied at the third level. Docket No. 36-2 at 8-9. The third-level response stated that the third-level reviewer had reviewed the confidential inquiry done at the second level and concurred with the determination of the second-level reviewer. Like the second-level response, the third-level response stated that "all staff personnel matters are confidential in nature and will not be disclosed." *Id.* at 8. The third-level response did not mention anything about Johnson's failure to name the wrongdoers in the original appeal. The third-level response also did not respond to Johnson's statement that he had been told that he could not have the incident reports that had the correctional officers' names.

### 2. Medical-Care Claim

Defendants presented undisputed evidence that Johnson filed only one inmate appeal that was addressed on the merits regarding his medical care at Salinas Valley after the July 16 incident. This inmate appeal was dated August 8, 2018, and assigned inmate appeal log # SVSP-HC-18001963. Docket No. 36-1 at 9-12.

In this inmate appeal, Johnson wrote: "I'm in endless pain day in day out[.] I was set up to be assaulted by (SVSP) C/O by #5 I/Ms[.] I was shot twice by the block gun once in the face head. Once in the right elboe. I'm in pain[.] I sent a 602 HC (SVSP HC 18001866). It was denied on 8/3/18[.] I'm in pain[.] I need to be in a medical institution where I can get the proper medical care. I had face surgery last week still can't eat and I get messave head aches. I need medical care!" Docket No. 36-1 at 11 (brackets added; errors in source). (The inmate appeal referred to in this appeal, i.e., SVSP HC 18001866, had been screened out at initial review on August 3 as a "general

5

allegation." *See* Docket No. 36-1 at 7.)

The Institutional Level Response to the health-care appeal determined that "no intervention" was needed. Docket No. 36-1 at 14. The response was prepared by Health-Care Appeals R.N. Villanueva, who is one of the two defendants on the medical-care claim in this case. *See id.* On October 11, 2018, nurse Villanueva conducted a telephone interview of Johnson (who was by that time at Kern Valley State Prison) and reviewed his health records to respond to his inmate appeal. She described the extensive care provided for Johnson since the July 16 altercation. She also explained that the treatment of pain was an ongoing process, that his condition would continue to be monitored, and that medical care would be provided as determined by the primary care provider to be medically indicated. *Id.* at 14-15. The response also informed Johnson of his ability to pursue his appeal further: "If you are dissatisfied with the Institutional Level Response, explain the reason in Section C of the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review. The headquarters' level review constitutes the final disposition on your health care grievance and exhausts your administrative remedies." *Id.* at 15.

There is no evidence that Johnson pursued the inmate appeal further after receiving the Institutional Level Response. The inmate appeal form in the record has no markings indicating that the appeal was sent for or received headquarters level review and the inmate appeal log indicates that the appeal received only institutional-level review. *See id.* at 7, 9-12.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Generally, as when a defendant moves for summary judgment against a plaintiff on the merits of the plaintiff's claims, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for nonexhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of proof remains with the defendant, however. *Id.* If material facts are disputed, summary judgment should be denied, and the "district judge rather than a jury should determine the facts" on the exhaustion question, *id.* at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," *id.* at 1170-71.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as

7

opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Johnson's second amended complaint is made under penalty of perjury (*see* Docket No. 17 at 10) and therefore is considered as part of the evidence in opposition to defendants' motion for summary judgment.

**DISCUSSION**

A. <u>Exhaustion Requirements</u>

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter,* 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Section 1997e(a) requires "proper exhaustion" of available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Id.* at 90. An inmate "need not exhaust *unavailable* [remedies]." *Ross*, 136 S. Ct. at 1858 (emphasis added). An administrative remedy is unavailable if, for example, "it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or if it is "so opaque that it becomes, practically speaking, incapable of use"; or if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The amount of detail in an administrative grievance necessary to properly exhaust a claim is

determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations").

In 2018, the State of California provided its inmates and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020).[4] In order to exhaust available administrative remedies within this system, a prisoner had to proceed through three formal levels of appeal and receive a decision from the Secretary of the CDCR or his or her designee. *Id.* § 3084.1(b) (repealed eff. June 1, 2020), § 3084.7(d)(3) (repealed eff. June 1, 2020).

California prisoners were required to lodge their administrative complaint on a CDCR-602 form (or a CDCR 602-HC form for a health care matter). The level of specificity required in an appeal for a non-health care matter was described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. . . . The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the [appeal form].

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4) (repealed eff. June 1, 2020).[5] Another regulation provided

---

[4] The regulations that set out the features of the administrative remedies process for California prisoners underwent a substantial restructuring in 2020. On March 25, 2020, and effective June 1, 2020, California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487. The regulations for health-care appeals also were changed: former California Code of Regulations Title 15, sections 3087 through 3087.12 were renumbered without substantive change effective January 1, 2019 and are now found at sections 3999.225 through 3999.237 in Title 15 of the California Code of Regulations. All the citations in this order to California regulations are to the regulations in place in 2018, rather than to the current regulations.

[5] Several Ninth Circuit cases have referred to California prisoners' grievance procedures as not specifying the level of detail necessary and instead requiring only that the grievance "describe the problem and the action requested." *See Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal. Code Regs. tit. 15, § 3084.2); *Sapp*, 623 F.3d at 824 ("California regulations require only that an inmate 'describe the problem and the action requested.'"); *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (when prison's procedures do not specify the requisite level of detail, "'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought'"). Those cases are distinguishable, however, because they did not address the regulations

9

that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included" in the originally submitted CDCR-602 inmate appeal form. Cal. Code Regs. tit. 15, § 3084.1(b) (repealed eff. June 1, 2020). Yet another regulation required the inmate to file a CDCR-602 within thirty days of the event. *Id.* at § 3084.8(b) (repealed eff. June 1, 2020).

Inmate appeals regarding health care matters were processed slightly differently from other appeals, although they also had to proceed through at least two formal levels and receive a decision from "headquarters" to complete the process. *See* Cal. Code Regs. tit. 15, § 3087(b) ("A headquarters' level health care grievance appeal disposition exhausts administrative remedies"); *see also id.* at §§ 3087.1(g), 3087.5 (renumbered eff. Jan. 1, 2019).[6] A regulation described the level of specificity required in a health-care appeal:

> The grievant shall document clearly and coherently all information known and available to him or her regarding the issue. (1) The grievant shall include any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. (2) If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance.

*Id.* at § 3087.2(g) (renumbered eff. Jan. 1, 2019).

Exhaustion of administrative remedies may occur if, despite the inmate's failure to comply with a procedural rule, prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process. *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016); *e.g.*, *id.* at 659 (although inmate failed to identify specific doctors, grievance put prison on notice he was complaining about denial of pain medication by doctors and prison easily identified pain management committee's involvement in decision-making process).

---

as they existed for California prisoners at the time of the events complained of in Johnson's second amended complaint. Whatever the former requirements may have been in the CDCR and whatever requirements may still exist in other non-CDCR facilities, since January 28, 2011, the operative regulation has required California prisoners using the CDCR's inmate appeal system to list the name(s) of the wrongdoer(s) in their administrative appeals and to state all facts known regarding the issue being appealed.

[6] Former California Code of Regulations Title 15, sections 3087 through 3087.12 were renumbered without substantive change effective January 1, 2019 and are now found at sections 3999.225 through 3999.237 in Title 15 of the California Code of Regulations. *See* Docket No. 36-1 at 3.

B. <u>Johnson Exhausted Administrative Remedies For His Failure-To-Protect Claims</u>

Johnson's appeal regarding the failure-to-protect claims received a third-level decision, which is the highest level in the administrative appeal system. He exhausted his administrative remedies for his claims that two defendants failed to prevent his release to a yard in which he had an enemy and that three defendants failed to stop an attack by other inmates in that yard.

Defendants urge that Johnson's appeal did not suffice to exhaust because he failed to identify any wrongdoer by name and "his description of their involvement is too vague to allow ready identification." Docket No. 36 at 6. Defendants further point out that the second-level response specifically stated that the appeal did not exhaust as to any staff member not identified in the grievance and that, if Johnson is "unable to name all involved staff, [Johnson] may request assistance in establishing their identity." Docket No. 36-2 at 14. But defendants fail to address events after that second-level decision, and those circumstances show that Johnson exhausted "such administrative remedies as are available," 42 U.S.C. § 1997e(a), "despite failing to comply with a procedural rule" because "prison officials ignore[d] the procedural problem and render[ed] a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

The evidence shows that, in response to the second-level decision, Johnson wrote that he had tried twice to obtain the reports with the correctional officers' names but that prison officials, including the yard captain, refused his requests. Docket No. 36-2 at 13. Prison officials refused to provide the documents that would allow Johnson to provide the information the second-level decision said was necessary. Also, Johnson did identify one particular wrongdoer, defendant Oyarzabal, who told him there was an enemy in the yard to which Johnson was being sent. *Id.* The third-level decision did not acknowledge Johnson's explanation that prison officials refused to provide him with copies of the incident reports that would have the relevant officials' names and did not note that he identified one wrongdoer (i.e., Oyarzabal). Instead, the third-level reviewer decided Johnson's inmate appeal on the merits and without any mention of the problem of the lack of names of the alleged wrongdoers.

11

As in *Reyes*, Johnson obtained a decision from the highest level of the administrative appeal system that chose to address the merits of the appeal rather than to reject it for the procedural reason that Johnson did not comply with the regulation's requirement that he provide the names of the wrongdoers. "[T]he state's interests in administrative exhaustion have been served. Prison officials have had the opportunity to address the grievance and correct their own errors and an administrative record has been developed." *Reyes*, 801 F.3d at 658; *see also Rinaldi v. United States*, 904 F.3d 257, 270-71 (3d Cir. 2018) (assault claim that was raised for the first time in appeal of another event satisfied exhaustion requirement because the Regional Director denied it on the merits); *Whatley v. Smith*, 898 F.3d 1072, 1083-84 (11th Cir. 2018) (claim is considered exhausted when prison officials decide a procedurally flawed grievance on the merits at the last available stage of administrative review).

This case has unique circumstances that combine to provide ample support for the conclusion that Johnson exhausted administrative remedies. First, accepting for present purposes that the statements in the verified second amended complaint are true, the incident in the yard would have been well documented. Johnson had been "viciously assaulted" by four other inmates on the yard in front of correctional staff and had been hit by two rounds fired by a gun tower officer. Docket No. 17 at 5, 7. Johnson's injuries were severe enough that he required a trip to a local emergency room and, later, "facial bone surgical repair." *Id.* at 6. Second, the second-level reviewer stated that the incident reports and medical reports had been reviewed and witnesses had been interviewed. Docket No. 36-2 at 15. Third, prison officials refused to turn over the documents that would have enabled Johnson to learn the names of the wrongdoers. *See* Docket No. 36-2 at 13. Prison officials claimed a need to keep personnel matters confidential and thus provided very little information to Johnson, other than to tell him they had concluded that staff had not violated CDCR policies. Finally, the third-level decision simply ignored Johnson's explanation that he had been unable to name prison officials because he was told he "can't have the report with the C/Os name in it." Docket No. 36-2 at 13 (errors in source). These circumstances -- showing that the incident was almost certainly well-documented, the consideration of documents and witness statements by the second-level responder, the refusal to disclose documentation to the inmate, and the third-level

12

decision that ignored Johnson's reported inability to obtain the documentation with the names -- support the determination that he exhausted administrative remedies when he received a third-level decision on the merits of his failure-to-protect claims.

Defendants have failed to carry their burden to demonstrate that there were available administrative remedies for Johnson and that he did not properly exhaust those available remedies for his failure-to-protect claims. The motion for summary judgment on the failure-to-protect claims therefore will be denied.

C.     Johnson Failed To Exhaust Administrative Remedies For His Medical-Care Claim

The undisputed evidence shows that Johnson filed only one administrative appeal potentially related to his medical care at Salinas Valley after the July 16 attack that passed the screening stage, i.e., inmate appeal log # SVSP-HC-18001963. Docket No. 36-1 at 11-12. The undisputed evidence also shows that this appeal (a) did not mention Dr. Sawyer or nurse Villanueva, (b) did not assert that Johnson needed or had been denied physical therapy, and (c) did not receive a headquarters level decision.

The health-care appeal failed to exhaust administrative remedies for Johnson's medical claim because Johnson did not provide the names of the involved staff members and a "description of their involvement." Cal. Code Regs., tit. 15, § 3087.2(g)(1). Unlike his appeal regarding the failure-to-protect claims, his health-care appeal was far too nonspecific to allow investigation of individual staff member's alleged wrongdoing: Johnson's inmate appeal alleged merely that his medical care was inadequate, that he was in pain, and that he wanted to go to a different prison for better care. That generic statement was far short of naming the involved staff members and describing their involvement. Johnson did not "provide the level of detail required by the prison's regulations," *Sapp*, 623 F.3d at 824, and therefore did not properly exhaust his administrative remedies for his claim against them. *See Ngo*, 548 U.S. at 90. And, unlike the appeal regarding the failure-to-protect claims, there is no evidence that anyone refused to provide the names of the involved officials or refused to provide documentation that would have allowed Johnson to learn those names.

13

The appeal failed to exhaust administrative remedies for the separate and additional reason that it never received a headquarters' level decision. There is no evidence in the record to show that Johnson further pursued his health-care appeal after it was rejected at the institutional level. He thus failed to comply with the regulation that requires inmates presenting health-care appeals to pursue relief to the headquarters' level and receive a decision from the headquarters' level to exhaust. *See* Cal. Cod Regs., tit. 15, § 3087.5(h) (renumbered eff. Jan. 1, 2019).

Defendants have carried their burden to demonstrate that there were available administrative remedies for Johnson and that Johnson did not properly exhaust those available remedies for his medical-care claim against Dr. Sawyer and nurse Villanueva. The undisputed evidence shows that California provides an administrative remedies system for California prisoners to complain about their health care and other conditions of confinement in prison, and that Johnson used that inmate appeal system to complain about other things but not about Dr. Sawyer's and nurse Villanueva's responses to his health care needs. Although "'[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation,'" *Reyes*, 810 F.3d at 659, the appeal -- that neither mentioned the medical-care defendants nor their denial of Johnson's request for physical therapy -- failed to alert the prison to the problem. Thus, the appeal did not suffice to exhaust administrative remedies for these medical-care defendants.

Johnson argues in his opposition brief that the defense witness who described the contents of the inmate appeal lacked the qualifications to state what additional care was required or what the surgeon had ordered. *See* Docket No. 40 at 4-5. But Johnson misunderstands the evidence. The issue is what Johnson wrote in his appeal, not what Johnson needed for medical care. The witness did not need any medical training or qualification to relay that information -- reading the words in the appeal is a task that could be done by any lay person.

Johnson relies on *Griffin*, 557 F.3d at 1120, and *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), to argue that an appeal is sufficient if it alerts the prison to the nature of the wrong for which redress is sought. *See* Docket No. 40 at 10-13. These cases do not aid the analysis because they address different sets of regulations than those that applied to Johnson: *Griffin* addressed county jail regulations in Arizona and *Strong* addressed Illinois regulations. And the regulations in both

14

those cases did not instruct the inmate as to the level of detail required in the inmate appeal. *See Griffin*, 557 F.3d at 1120 ("The Maricopa County jail's procedures, however, provide little guidance as to what facts a grievance must include"); *Strong*, 297 F.3d at 650 ("As far as we can see, however, Illinois has not established any rule or regulation prescribing the contents of a grievance or the necessary degree of factual particularity.") As explained in footnote 5, above, it does not matter what California regulations required at another time or what regulations in other prison/jail systems require; the critical question is what was required by the California regulations in effect in July and August 2018. *See supra* fn. 5. Those California regulations in effect in July and August 2018 were not silent; instead, they explicitly required the inmate to name the staff members involved and to describe their involvement. Johnson did not do so.

To the extent that Johnson attempts to support his argument for exhaustion by submitting copies of forms in which he requested medical care in July 2018 as well as declarations from other inmates who state they witnessed him unsuccessfully request medical care from July 16 through 31, *see* Docket No. 40 at 26-36, any such reliance is irrelevant to the claim at issue, *see* Dkt. 17 at 7. The specific claim alleged by Johnson in his second amended complaint is that Dr. Sawyer and nurse Villanueva were deliberately indifferent by denying Johnson's requests for physical therapy *after* his surgery on August 2, 2018. *Id.* Thus, the health care services requests and declarations relating to the denial of medical care *prior to* August 2 are of no significance and fail to support Johnson's claim that he exhausted administrative remedies for his medical-care claim.

Viewing the evidence and reasonable inferences therefrom in the light most favorable to Johnson, no reasonable fact-finder could conclude that the inmate appeal that did not mention the names of Dr. Sawyer or nurse Villanueva, did not mention the failure to provide physical therapy, and did not receive a decision at the headquarters' level exhausted administrative remedies for the claim against Dr. Sawyer and nurse Villanueva.

Defendants have carried their burden to show that Johnson did not properly exhaust his administrative remedies for his claim against Dr. Sawyer and nurse Villanueva. Once defendants met their initial burden, the burden shifted to Johnson to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable

to him. *See Albino*, 747 F.3d at 1172. Johnson failed to make such a showing. Bearing in mind that defendants have the ultimate burden of proof on the defense and viewing the evidence in the light most favorable to Johnson, the court concludes that Dr. Sawyer and nurse Villanueva are entitled to judgment as a matter of law on the affirmative defense that Johnson failed to exhaust administrative remedies for his § 1983 claim against them.

When there is an exhaustion problem that affects part, but not all, of a complaint, the court need not dismiss the entire complaint. *Jones v. Bock*, 549 U.S. 199, 222-24 (2007) (rejecting "total exhaustion-dismissal" rule); *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005). Rather than requiring Johnson to file a third amended complaint, it is easier to simply dismiss the unexhausted claim against Dr. Sawyer and nurse Villanueva for deliberate indifference to medical needs because it is not so intertwined with the exhausted part that it is difficult to untangle them. *Lira*, 427 F.3d at 1175-76. Accordingly, the claim against Dr. Sawyer and nurse Villanueva for deliberate indifference to medical needs is dismissed without prejudice to Johnson filing a new action against them if he ever properly exhausts administrative remedies for the claim.

D.  Scheduling

   1.  Further Motion For Summary Judgment

Defendants indicated in their motion for summary judgment that if the case was not resolved in their favor on the exhaustion issue, they wanted to file another motion for summary judgment to address the merits of the case. *See* Docket No. 36 at 2 n.1. Having determined that the failure-to-protect claims are not unexhausted, the court now sets the following briefing schedule for a further dispositive motion from defendants on the failure-to-protect claims:

   a.  No later than **August 6, 2021**, defendants must file and serve a motion for summary judgment. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to Johnson a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012).

16

b.  Johnson's opposition to the motion for summary judgment must be filed with the court and served upon defendants no later than **September 10, 2021**. Johnson must bear in mind the notice and warning regarding summary judgment provided in the order of service as he prepares his opposition to any motion for summary judgment.

c.  If defendants wish to file a reply brief, the reply brief must be filed and served no later than **September 24, 2021**.

2.  Discovery

Defendants avoided responding to earlier discovery requests from Johnson on the ground that the exhaustion question should be decided first. The court agreed that this was an appropriate approach to the case. *See* Docket No. 39. Now that the exhaustion question has been decided adverse to defendants on the failure-to-protect claims, defendants must respond to the requests for admission and any other discovery requests they earlier declined to answer before the exhaustion question was resolved. No later than **July 16, 2021**, Defendants must serve their responses to Johnson's existing discovery requests, including his requests for admission. Defendants remain free to object to the discovery requests on grounds other than that the exhaustion question should be decided first. The parties also are now free to resume their other discovery efforts.

Discovery about Johnson's injuries and medical needs after the July 16, 2018 incident is permissible as it relates to the consequences of the correctional staff's alleged failure to protect him. However, the court expects that there will not be further discovery about Dr. Sawyer's and nurse Villanueva's particular acts or omissions because they are being dismissed due to the failure to exhaust administrative remedies.

Although the incident report for the July 16 events may not have been disclosed to Johnson during the administrative appeal process, it must now be disclosed. No later than **June 25, 2021**, defendants must file and serve a copy of Incident Log # SVSP-FCY-18-07-0668 and any other incident report prepared for the July 16 events.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Docket No. 46. Summary judgment is granted in favor of Dr. Sawyer and nurse Villanueva on Johnson's claim that they were deliberately indifferent to Johnson's medical needs in violation of his rights under the Eighth Amendment. When a final judgment is entered, it will include a judgment in favor of defendants Sawyer[7] and Villanueva and against Johnson. The motion for summary judgment is denied as to the Eighth Amendment failure-to-protect claims against defendants Oyarzabal,[8] Cermeno, Perez, Matias, and Salgado.

Defendants Oyarzabal, Cermeno, Perez, Matias, and Salgado may file a motion for summary judgment regarding the merits of the case in accordance with the schedule set forth in Section D.1, above. The parties may engage in further discovery as set forth in Section D.2, above.

**IT IS SO ORDERED**.

Dated: June 8, 2021

SUSAN ILLSTON
United States District Judge

---

[7] The clerk shall correct the spelling of Dr. Sawyer's last name from "S. Swayer" to "S. Sawyer" on the court's ECF system. *See supra* at fn. 2 (citing Docket No. 25 at 6).

[8] The clerk shall also correct the spelling of Sgt. Oyarzabal's last name from "A. Qyarzabal" to "A. Oyarzabal" on the court's ECF system. *See supra* fn. 1 (citing Docket No. 42).

18